UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NOODLES DEVELOPMENT, LP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:06CV00692 HEA |
| ) | |
| NINTH STREET PARTNERS, LLP, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction, [Doc. No. 26]. Plaintiff seeks a Preliminary Injunction directed to Defendants Ninth Street Partners, LLP and DCSC Partners, LLP (the Partnerships) as set forth below. A hearing was held on this matter beginning on November 17, 2006, and which concluded on January 8, 2007.

Plaintiff seeks a preliminary injunction:

(a) Restraining the Partnerships from operating Noodles' franchises or competing with Noodles by owning, operating or having any interest in a fast casual restaurant that serves noodle-based dishes located within a ten (10) mile radius of the Franchise Locations for a period of two (2) years after termination of the Franchise Agreements;

(b) Requiring the Partnerships to offer to assign the leases of all franchises to Noodles;

(c) Restraining the Partnerships from using Noodles' licensed Trademarks or any confusingly similar versions thereof in any way;

(d) Requiring the Partnerships to remove any and all advertising material and signs or labels from the Franchise Locations and discontinue service or use of any telephone number or numbers associated with the licensed Trademarks unless directed in writing by Noodles to do otherwise; and

(e) Requiring the Partnerships to return the Operations Manual to Noodles.

## Facts and Background

Plaintiff is a franchisor of the restaurant "Nothing But Noodles." Defendants were franchisees of the Plaintiff, with locations in Columbia and St. Peters, Missouri, until the franchise agreements were terminated in January, 2006. Defendants initially re-opened and operated the restaurants under the name "Ninth Street Noodles." Subsequently, after counsel for Plaintiff and Defendants had conversations about this name, Defendants agreed to change the name to "Ninth Street Café." The restaurants are currently being operated under this name. The new logo does not resemble the Nothing But Noodles logo.

On January 30, 2006, Plaintiff sent Defendants a letter demanding compliance with the terms of the Franchise Agreements. Plaintiff advised Defendants that they needed to: Cease operating the franchise; assign the leases to Noodles Development LP, if requested to do so; cease using Nothing But Noodles'

licensed Trademarks in any way; cease all advertising or other use of Nothing But Noodles' slogans, sign, logos, marks; remove any and all advertising material and signs or labels from said franchise; return the operations manuals, menus and advertising. Defendants were further advised to repaint the premises and change any other physical elements which were associated with the franchise.

From the time of the termination of the franchises to the time of the hearing,[1] Defendants no longer operate Nothing But Noodles restaurants. They have offered to assign the leases to the two locations to Plaintiff. Plaintiff declined this offer. Defendants have removed and/or changed various items from their restaurants, including all items that in any way refer to the name "Nothing But Noodles;" the large wavy green noodles that hung from the ceiling; the wavy metal cast display above the register; the take out section; all art in the St. Peters store; and photographs hung in the Columbia store. Defendants changed the table caddies; all hanging lamps; the wall color; signage; menus; and uniforms. Plasma televisions were added and Defendants no longer serve alcohol.

---

[1] Plaintiffs continuously point out to the Court that a number of the "de-identification" changes have occurred only after the filing of the Motion for Preliminary Injunction, and some even up to the day before the hearing. While this may be significant with respect to the issue of damages at a later time, it is elementary that the Court analyzes the facts at the time of the hearing in determining whether to issue a preliminary injunction.

Defendants further testified that they no longer use any of Plaintiff's manuals and that the manuals were returned to Plaintiff or to their attorneys for use during this litigation.

There are no other Nothing But Noodles located in Missouri. Plaintiff testified that it is sincerely interested in opening a franchised Nothing But Noodles restaurant in the markets previously occupied by Defendants. There was testimony, however, that Plaintiff is now franchising a different concept, Oodles, and that its focus is now on the new franchise concept.

## **Discussion**

In deciding a motion for a preliminary injunction, a district court balances four factors: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir.2003) (citing *Dataphase Sys., Inc. v. CL Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981)). *Straights and Gays for Equality (SAGE) v. Osseo Area Schools-Dist. No. 279,* 471 F.3d 908, 911 (8th Cir. 2006). "A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant." *Watkins Inc.*, 346 F.3d at 844.

"None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent*., Inc., 799 F.2d 1219, 1222 (8th Cir.1986). A party moving for preliminary injunctive relief is required to establish a sufficient threat of irreparable harm. *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir.1996). The district court has broad discretion when ruling on requests for preliminary injunctive relief and a reviewing court will reverse only for an abuse of discretion, clearly erroneous factual determinations, or application of an incorrect legal standard. *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir.1998).

The general rule is that findings of fact and conclusions of law made in a court's disposition of a motion for preliminary injunction are provisional. *See, e.g., University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (the general rule is that "the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits," because courts must customarily decide preliminary injunction motions "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits"); *accord Henderson v. Bodine Alum., Inc.*, 70 F.3d 958, 962 (8th Cir. 1995) (citing *Camenisch* for this "general rule"). Thus, any findings of fact in this ruling, as well

as any conclusions of law forming part of the court's determination of whether the issuance of a preliminary injunction is proper in this case, are intended to be subject to this "general rule" and are not to be considered "final."

**Likelihood of Success on the Merits**

The first factor the court must consider under *Dataphase* is the likelihood or probability of success on the merits. *Pottgen v. Missouri State High Sch. Activities Ass'n*, 40 F.3d 926, 929 (8th Cir.1994). In considering this factor, the court need not decide whether the movant ultimately will succeed on the movant's claims. *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir.1991). Rather, the movant's success on the merits must be "at least... sufficiently likely to support the kind of relief it requests." *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 488 (8th Cir.1993). Thus, a showing of likelihood of success on the merits requires simply that the moving party find support for its position in the governing law. *Baker Elec. Co-op. Inc. v. Chaske*, 28 F.3d 1466, 1473-74 (8th Cir.1994).

**Breach of Contract**

Defendants failed to make the required payments under the Franchise Agreements, which was the reason for the termination of the Agreements. There is no dispute as to this fact. Although Defendants attempt to establish that they were

defrauded through misrepresentation of earnings and therefore argue that the entire Franchise Agreements are void, the evidence produced at the hearings falls short of establishing the required elements of fraud. The evidence presented establishes that the earnings information was provided by Rodney James and partially by Steve Nichols. Defendant Mulwee is a longtime friend and business associate of James. Evidence was presented regarding the relationship between Mulwee, James and Nichols as "partners" in the Nothing But Noodles Missouri franchises. No evidence was presented that the earnings information was provided by the founders of the Nothing But Noodles concept, Todd Welker and Chris Everts. The tenuous nature of the source of the earnings information *vis a vis* Plaintiff, weakens Defendants' absolute defense argument that they were not required to comply with the provisions of the Franchise Agreements. Thus, Plaintiff has established a likelihood of success on the merits of its breach of contract claim.

**Trademark and Trade dress Infringement**

Plaintiffs contend that Defendants have infringed on its trademarks and trade dress in violation of the Lanham Act. 15 U.S.C. §§ 1114 and 1125, which provide, respectively:

(1) Any person who shall, without the consent of the registrant--

(a) use in commerce any reproduction, counterfeit, copy, or colorable

imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,

shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114.

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or

she is or is likely to be damaged by such act.

15 U.S.C. §1125.

The Lanham Act "prohibits the use of a mark in connection with goods or services in a manner that is likely to cause confusion as to the source or sponsorship of the goods or services." *Davis v. Walt Disney Co.,* 430 F.3d 901 (8th Cir. 2005); 15 U.S.C. § 1125(a)(1). This includes confusion "as to whether there is an 'affiliation, connection, or association' with another person." *Id.* "[T]he core element of trademark infringement law is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Id.* (internal citations and quotation marks omitted).

Trade dress is "the total image of a product, the overall impression created, not the individual features." *Gateway, Inc. v. Companion Products, Inc.,* 384 F.3d 503 (8th Cir.2004). To establish a claim for infringement thereof, Plaintiff must prove: (1) that its trade dress is inherently distinctive, or has acquired distinctiveness through secondary meaning; (2) that it is nonfunctional; and (3) that its imitation would result in the likelihood of confusion in consumers' minds as to the source of the product. *Id*.

Between the termination of the Franchise Agreements and prior to the hearings, Defendants continued to operate the restaurants using Plaintiff's menus

and style.  They changed the name to "Ninth Street Noodles," but this name was still very similar to Nothing But Noodles.  The wavy noodle hanging from the ceiling and artwork remained the same.  Defendants continued to use, at that time, the recipes and served noodle dishes.  Under the standards set forth above, for the purpose of this analysis, Plaintiffs have established a likelihood of success on the merits of its trademark and trade dress claims.  While the Court is cognizant of the subsequent changes to Defendant's restaurants, the evidence presented establishes that for a time, Defendants continued to operate their business as they had prior to the termination.  Although Defendants contend that there are countless restaurants that exist that are "trendy" or "artsy" Defendants have not produced evidence sufficient to overcome the "total" look of Plaintiff's Nothing But Noodles restaurants, *i.e.,* a trendy, fast casual restaurant serving exclusively noodle dishes.

**<u>Irreparable Harm</u>**

The second *Dataphase* factor is the threat of irreparable harm to the movant absent the injunction.  *Dataphase*, 640 F.2d at 114. Thus, in this circuit "a party moving for a preliminary injunction is required to show the threat of irreparable harm," *Baker Elec. Co-op.*, 28 F.3d at 1472 (citing *Modern Computer Sys.*, 871 F.2d at 738, and *Dataphase*), and the lack of irreparable harm is sufficient ground for denying or vacating a preliminary injunction. *Aswegan v. Henry*, 981 F.2d 313,

314 (8th Cir.1992) (citing *Modern Computer Sys.*, 871 F.2d at 738).

The Eighth Circuit has held that the movant's failure to sustain its burden of proving irreparable harm ends the inquiry "'and the denial of the injunctive request is warranted.' [*Gelco*, 811 F.2d] at 420. We must inquire, then, whether [the movant] has met its burden of proving that it will suffer irreparable harm absent a preliminary injunction." *Id.*

"[T]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959). Thus, to warrant a preliminary injunction, the moving party must demonstrate a sufficient threat of irreparable harm. See *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir.1996).

Sufficient showing on this second factor in the *Dataphase* analysis can be made, for example, by showing that the movant has no adequate remedy at law. *Baker Elec. Co-op.*, 28 F.3d at 1473. Conversely, where the movant has an adequate legal remedy, a preliminary injunction will not issue. *Frank B. Hall & Co. v. Alexander & Alexander, Inc.*, 974 F.2d 1020, 1025 (8th Cir.1992) (but finding in that case that the district court's conclusion that there was an adequate remedy was based on an erroneous legal premise, and requiring a proper balance of *Dataphase* factors). More specifically still, for present purposes, the Eighth Circuit Court of

Appeals has explained "irreparable harm" as follows:

> When injunctive relief is sought under the Lanham Act, the finding of a tendency to deceive satisfies the requisite showing of irreparable harm. *See Black Hills Jewelry [Mfg. Co. v. Gold Rush, Inc.*], 633 F.2d [746,] 753 [ (8th Cir.1980) ] ("To obtain an injunction under section 43(a) appellees need only show that the falsities complained of had a tendency to deceive."); *McNeilab, Inc. v. American Home Products Corp.*, 848 F.2d 34, 38 (2d Cir.1988) (where challenged advertisement directly, but falsely, proclaims superiority of defendant's product over plaintiff's, irreparable harm may be presumed). Absent such a showing, however, irreparable harm cannot be presumed where, as here, plaintiff has not established any prospect of success upon the merits. *See Sanborn*, 997 F.2d at 489; *Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 192 (2d Cir.1980) ("While proof of actual diversion of sales is not required for a § 43(a) injunction to issue, proof that the advertising complained of is in fact false is essential.").

*United Indus. Corp.*, 140 F.3d at 1183-84.

Since the time of the termination of the Franchises, Defendants have complied with Plaintiff's demands. Defendants no longer exclusively serve noodle dishes, rather, they have expanded their menus to various types of entrees. Furthermore, Defendants have changed the atmosphere in their restaurants, eliminating any characteristics reminiscent of a Nothing But Noodles franchise restaurant. While Plaintiff contends that Defendants continue to use its recipes, there is insufficient evidence on this claim. Plaintiffs are not at liberty to preclude a generic type dish, such as stroganoff, for example by arguing that its recipe is being used. Any

number of restaurants serve this kind of dish and Plaintiff has failed to establish that it has exclusive rights over such types of dishes.

Plaintiff argues that it is entitled to enjoin Defendants from the operation of the Ninth Street Café restaurants based on an allegation of irreparable harm, however, Plaintiff has failed to establish that Defendants new restaurants continue to infringe on any trademark and/or trade dress. There are no other Nothing But Noodles restaurants anywhere close to Defendants' restaurants, thus, it cannot be said that Defendants are in direct competition with Plaintiff, nor that there was a likelihood of confusion between Plaintiff and Defendant. Plaintiffs declined to accept assignment of the leases from Defendants so that it could operate its own Nothing But Noodles. Plaintiff has shifted its focus onto the new "Oodles" concept. Defendant no longer exclusively serves noodle dishes. As the situation stood before the court at the time of the hearing, there is nothing for the Court to enjoin with respect to Plaintiff's claims. There has been no showing that as of the time of the hearing, there was a threat of irreparable harm. An adequate remedy in law exists for Plaintiff in the event it establishes that it is entitled to damages for a breach of the Franchise Agreements and/or for trademark and trade dress infringement.

Specifically, as previously noted, Plaintiff seeks an injunction:

(a) Restraining the Partnerships from operating Noodles' franchises or

competing with Noodles by owning, operating or having any interest in a fast casual restaurant that serves noodle-based dishes located within a ten (10) mile radius of the Franchise Locations for a period of two (2) years after termination of the Franchise Agreements;

(b) Requiring the Partnerships to offer to assign the leases of all franchises to Noodles;

(c) Restraining the Partnerships from using Noodles' licensed Trademarks or any confusingly similar versions thereof in any way;

(d) Requiring the Partnerships to remove any and all advertising material and signs or labels from the Franchise Locations and discontinue service or use of any telephone number or numbers associated with the licensed Trademarks unless directed in writing by Noodles to do otherwise; and

(e) Requiring the Partnerships to return the Operations Manual to Noodles.

Defendants have complied with all of the above. There can therefore be no showing of irreparable harm. While Plaintiff argues that Defendants are still infringing, the restaurants are no longer exclusively noodle based. Testimony established that Defendants are not using any of Plaintiff's recipes or operations manuals. Furthermore, Defendants have changed the decor of its restaurants such that none of Plaintiff's characteristic traits remain. Simply put, Defendants have now ceased to operate a Nothing But Noodles franchise/restaurant, and thus, there is no continued loss of goodwill to Plaintiff. The likelihood of confusing these

restaurants as they exist now is non-existent.[2]  As such, the evidence establishes that this *Dataphase* factor has not been established.

**Balance of Harm**

Although lack of "irreparable harm," standing alone, would warrant denial of Plaintiff's motion for preliminary injunction, the third *Dataphase* factor, "balance of harms," also warrants denial.  *See Dataphase*, 640 F.2d at 114 (the third factor is the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties).  The "balance of harms" analysis is not identical to the "irreparable harm" analysis.  *Pottgen*, 40 F.3d at 929. Irreparable harm focuses on the harm or potential harm to the movant of the opposing party's conduct or threatened conduct.  *Dataphase*, 640 F.2d at 114.  In contrast, the balance of harms analysis examines the harm of granting or denying the injunction upon both of the parties to the dispute and upon other interested parties, including the public. *Id.*; see also *Glenwood Bridge*, 940 F.2d at 372;  *Modern Computer Sys.*, 871 F.2d at 737-38.

In conducting the "balance of harms" analysis required under *Dataphase*, it is obvious that an illusory harm to the movant will not outweigh any actual harm to the

---

[2]  While Plaintiff attempted to show confusion with a newspaper article written about Defendants' Ninth Street Café, the article also tends to establish that the restaurant is no longer a Nothing But Noodles, rather, it points out the significant changes and new menu items.

- 15 -

non-movant. *Frank B. Hall*, 974 F.2d at 1023. To determine what must be weighed, the court finds that courts of this circuit have looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec. Co-op.*, 28 F.3d at 1473. Also, the potential economic harm to each of the parties and to interested third parties of either granting or denying the injunction is relevant. *Id.* Another consideration in the balance of harms calculus is whether the defendant has already voluntarily taken remedial action. *Sanborn Mfg.*, 997 F.2d at 489. Where the non-movant has taken such action, the balance of harms is readjusted, because the potential for economic or other harm to the movant has been eliminated. *Id.* Similarly, present harm as the result of past misconduct is not sufficient to justify the injury to the non-movant of granting a preliminary injunction requiring some additional corrective action, because such relief "goes beyond the purpose of a preliminary injunction." *Id.* at 490.

Defendants have indeed taken remedial steps as outlined above. Furthermore, Plaintiff cannot rely on past actions to enjoin Defendants from operating the Ninth Street Café restaurants. Furthermore, Plaintiff asks the Court to enjoin the operation when it has refused assignment of the leases. The harm to Defendants in enjoining them from operating the Ninth Street Café, while refusing to accept the leases essentially asks the Court to put Defendants out of business. This

harm to Defendants clearly outweighs any past harm to Plaintiff. Plaintiff's argument that it does not seek to put Defendants out of business; that Defendants are free to operate a "pizza restaurant" or any other type restaurant, just not a "fast casual noodles based restaurant" is disingenuous at best when weighed against the relief Plaintiff seeks, *i.e.*, to enjoin Defendants from operating its restaurants. The balance of the harm factor clearly mandates against injunctive relief.

**<u>The Public Interest</u>**

The final factor in the Dataphase analysis is the impact of granting or denying the preliminary injunction upon the public interest. *Pottgen*, 40 F.3d at 929; *Dataphase*, 640 F.2d at 114. While public interest would not be served through a continued infringement, the facts presented during the hearing establish that Defendants have taken significant remedial steps to avoid infringing Plaintiff's trademarks and trade dress. Enjoining Defendants from operating a totally different type of restaurant does not serve the public interest because it will merely put Defendants out of business, and will not remedy any identifiable wrong against Plaintiff. Plaintiffs have an adequate remedy at law for any proven violations of the Franchise Agreements. Defendants' operations no longer fall within the provisions of prohibited activities contained in the Franchise Agreements. The public interest, therefore is best served by refusal to punish for past conduct. The equities,

therefore tilt toward denying preliminary injunctive relief.

## Conclusion

Based upon the foregoing consideration of all of the *Dataphase* factors, Plaintiff is not entitled to injunctive relief.

Accordingly,

**IT IS HEREBY ORDERED**, that Plaintiff's Motion for a Preliminary Injunction, [Doc. No. 26], is denied.

**IT IS HEREBY ORDERED** this matter will now be set for a scheduling conference in order to schedule the time frame for trial on the merits.

Dated this 13th day of April, 2007.

                                         HENRY EDWARD AUTREY
                                   UNITED STATES DISTRICT JUDGE